# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN PABLO RAMOS AVALOS,<br>Petitioners,<br>v.<br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br>Respondent. | Case No. 1:26-cv-03644-JLT-EPG-HC<br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br>ORDER DENYING PETITIONER'S MOTION TO EXPEDITE<br>(ECF No. 9) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States in or about April 2023 by crossing the border. (ECF No. 1 at 4.[1]) On July 3, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") agents at a bus station while Petitioner was waiting for transportation to his construction job. (Id. at 5.) On January 5, 2026, an immigration judge ("IJ") held a bond hearing and denied bond, finding Petitioner a flight risk. (ECF No. 6-1; ECF No. 6-2 at 2.) On January 14, 2026, Petitioner was ordered removed. Petitioner filed a timely appeal with the Board of Immigration Appeals ("BIA") that is still pending. (ECF No. 1 at 4–5.)

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

On May 12, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) The motion for TRO was denied as untimely. (ECF No. 5.) On June 2, 2026, Respondents filed a response, and Petitioner filed a reply on June 15, 2026. (ECF Nos. 6, 7.)

## II.

## DISCUSSION

In the petition, Petitioner raises the following claims for relief: (1) violation of the Immigration and Nationality Act because he is being detained without a bond hearing despite his detention being governed by 8 U.S.C. § 1226(a); (2) violation of the Due Process Clause because he has been detained for over ten months without a bond hearing; and (3) violation of the right to family unity. (ECF No. 1 at 7–8.) In response, Respondents assert that Petitioner was provided a bond hearing and he has not exhausted his administrative remedies. (ECF No. 6.)

In Count One, Petitioner asserts that he is being detained without a bond hearing and that the government's argument that § 1225(b)(2) applies has been consistently rejected by this Court. (ECF No. 1 at 7; ECF No. 7 at 2.) However, Respondents in the instant case do not contend that Petitioner is subject to § 1225(b)(2). (ECF No. 6.) Further, an immigration judge held a bond hearing pursuant to § 1226(a) because Petitioner is "not subject to mandatory detention[.]" (ECF No. 6-1.) Accordingly, the undersigned recommends finding that Petitioner is not entitled to relief on Count One.

In Count Two, Petitioner asserts that his prolonged detention without a bond hearing violates due process. (ECF No. 1 at 8.) However, on January 5, 2026, an immigration judge held a bond hearing. (ECF No. 6-2 at 2; ECF No. 6-1.) "The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration," and the Ninth Circuit has held that 8 U.S.C. § 1226(a), which "offers substantial procedural protections to detained persons," is not facially unconstitutional. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193–94 (9th Cir. 2022). Further, the Ninth Circuit has rejected the claim that "the Due Process Clause entitles [a petitioner] to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence."

Rodriguez Diaz, 53 F.4th at 1203. Although Rodriguez Diaz did "not foreclose all as-applied challenges to § 1226(a)'s procedures," 53 F.4th at 1213, Petitioner has not established that his case is distinguishable from Rodriguez Diaz. Accordingly, the undersigned recommends finding that Petitioner is not entitled to relief on Count Two.[2]

In Count Three, Petitioner asserts a violation of the right to family unity. (ECF No. 1 at 8–9.) This Court has previously rejected a similar family separation argument:

> To violate "the well-established substantive due process right to family integrity," "the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency.' " Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (alternation in original) (quoting Rochin v. California, 342 U.S. 165, 172–73 (1952)). The Court finds Aguilar v. U.S. Immigration & Customs Enforcement Division of the Department of Homeland Security, 510 F.3d 1 (1st Cir. 2007), instructive and persuasive. Aguilar involved hundreds of undocumented noncitizens who were detained following a raid on a factory in Massachusetts. Due to a shortage of bed space in Massachusetts, ICE transported a substantial number of the detainees to distant locations, such as Texas. Id. at 6. The Aguilar class alleged that ICE's actions violated, *inter alia*, their substantive due process rights of family integrity and of parents to make decisions as to the care, custody, and control of their children. Id. at 7, 18–19. In finding that there was no violation of the class's substantive due process rights, the First Circuit stated:
>
>> Our thinking is influenced by a realization that the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process. *See Payne–Barahona*, 474 F.3d at 2; *de Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973). Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country. *See Demore*, 538 U.S. at 523, 123 S.Ct. 1708 (recognizing "detention during deportation proceedings as a constitutionally valid aspect of the deportation process").
>>
>> This is critically important because every such detention of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children. *See Payne–Barahona*, 474 F.3d at 3. That a detention has an impact on the cohesiveness of a family unit is an inevitable concomitant of the deprivation of liberty inherent in the detention itself. So long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution.
>>
>> We hold, therefore, that such an incidental interference, standing alone, is not of constitutional magnitude. To rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process

[2] Petitioner does not reference the January 5, 2026 bond hearing in his pleadings whatsoever and thus, does not challenge the constitutionality of the bond hearing itself. Accordingly, the Court declines to address Respondents' exhaustion argument.

> claim. That would place new and unprecedented constraints on law enforcement activities. Such constraints would be unwarranted.
>
> ...
>
> We see the matter this way. Although the interest of parents in the care, custody, and control of their offspring is among the most venerable of the liberty interests protected by the Fifth Amendment, *see, e.g., Troxel*, 530 U.S. at 65, 120 S.Ct. 2054; *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001), the petitioners have not demonstrated that this guarantee of substantive due process encompasses their assertions. After all, the right to family integrity has been recognized in only a narrow subset of circumstances.
>
> To be sure, the petitioners cite cursorily to cases that deal with this right but they conspicuously fail to build any bridge between these cases and the facts that they allege. We do not think that this is an accident. The petitioners' claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity. They have not alleged that the government has interfered permanently with their custodial rights. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Nor have they alleged that the government has meddled with their right to make fundamental decisions regarding their children's education, *see, e.g., Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), or religious affiliation, *see, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Taken most favorably to the petitioners, the interference alleged here is transitory in nature and in no way impinges on parental prerogatives to direct the upbringing of their children.
>
> We have scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due Process Clause, and we have found none. That chasm is important because, given the scarcity of "guideposts for responsible decisionmaking in this unchartered area," courts must be "reluctant to expand the concept of substantive due process." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

Aguilar, 510 F.3d at 22–24 (footnote omitted).

Like the petitioners in Aguilar, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." 510 F.3d at 23. The Court recognizes the burden Petitioner's immigration proceedings and prolonged detention has placed on her family and is sympathetic to her situation. However, Petitioner has provided no authority in support of her claim.

Ortiz-Chavez v. Chestnut, No. 1:26-cv-01182-JLT-SAB-HC, 2026 WL 1146068, at *8–9 (E.D. Cal. Apr. 28, 2026), report and recommendation adopted, 2026 WL 1329728 (E.D. Cal. May 13, 2026).

Similarly, here, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." Aguilar, 510 F.3d at 23. Additionally, Petitioner has provided no authority in support of his claim. Accordingly, the undersigned recommends finding that Petitioner is not entitled to habeas relief on Count Three.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

Further, Petitioner's motion to expedite (ECF No. 9) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 18, 2026**

/s/ Eric P. Grosjean

UNITED STATES MAGISTRATE JUDGE